## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| **TODD F. SMITH** and **PATRICIA A. LIVESAY SMITH**, | ) ) ) ) | Case No. |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **COMPLAINT FOR DAMAGES AND JURY** |
| **WELLS FARGO BANK, NA,** | ) ) | **DEMAND** |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiffs, Todd F. Smith and Patricia A. Livesay Smith, through counsel, for their complaint against Defendant Wells Fargo Bank, NA, state:

### WHY PLAINTIFFS ARE FILING THIS CASE

1.  Plaintiffs encountered financial difficulty in 2017 and prior to defaulting on their mortgage loan reached out for assistance. They withdrew their first request for help when they recognized that they would not qualify due to lack of income. Within a year they had gotten back on their feet and again reached out for help, this time secure in the knowledge that their financial circumstances had improved and that they could commit to a modified loan. They applied to their mortgage loan servicer, but instead of helping them, that servicer erroneously

1

treated them as not being eligible.  This error was raised by the Plaintiffs' counsel and repeatedly Plaintiffs sought to have the servicer simply review and evaluate their application.  When that did not happen, and instead the servicer sought to sell Plaintiffs' home, this action became necessary.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiffs, Todd A. Smith ("Todd") and Patricia A. Livesay Smith ("Patricia") (collectively "Plaintiffs" or "Todd and Patricia"), are the owners of the home at 1115 Helen Drive, Algonquin, Illinois 60102 (the "Home").

3.      Todd and Patricia have lived in and maintained the Home as their primary, principal residence since purchasing the residence in 2007.

4.      In order to refinance a prior loan on the Home, on August 31, 2009, Todd and Patricia borrowed money and executed a note in the amount of $335,093.00 payable to Sterling National Mortgage Co. Inc (the "Note"). To secure payment of that Note, Todd and Patricia granted a contemporaneous mortgage lien on their Home (the "Mortgage"). The Note and Mortgage are collectively referred to herein as the "Loan."  A copy of the Loan is attached as *Exhibit 1*.

5.     Defendant Wells Fargo Bank, NA ("Wells Fargo"), is the present owner and holder of the Loan and is the servicer of that Loan since the date of origination on August 31, 2009.

6.     Defendant Shapiro Kreisman & Associates, LLC ("Shapiro") is an Illinois limited liability company which has members and employees engaged in the practice of law in the State of Illinois.

7.     Shapiro was the agent and attorney for Wells Fargo with respect to conduct discussed *infra*.

8.     Jurisdiction is conferred by 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq.* ("RESPA").

9.     This action is brought to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. §§1024.35, 1024.36, and 1024.41 of Regulation X. Additionally, this action seeks relief pursuant to the FDCPA.

10.     This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. §1367.

11.     Venue lies in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action, is in this District.

## SUMMARY OF CLAIMS

12.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

13.     Specifically, on January 17, 2013, the CFPB issued RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

14.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. §1024.2(b).

15.     Wells Fargo is subject to these Regulations X and Z and does not qualify for an exception for "small servicers", as defined in 12 C.F.R. §1026.41(e)(4), nor the exemption for a "qualified lender", as defined in 12 C.F.R. §617.700.

4

16.     Todd and Patricia assert claims for relief against Wells Fargo for violations of the specific rules set forth in Regulations X and Z and against Shapiro for violation of the FDCPA, as set forth, *infra*.

17.     Todd and Patricia assert a private right of action under RESPA pursuant to 12 U.S.C. §2605(f), and any such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

18.     Todd and Patricia also assert claims for conduct which violates the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Fraud Act"), 815 ILCS 505/1 *et seq*, which also entitles Todd and Patricia to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees.

## LOAN LOSS MITIGATION AND FORECLOSURE

19.     In January 2017, Todd and Patricia encountered financial difficulties caused by the loss of income related to a small business they owned and operated.

20.     At that time, fearing that they would have difficulty paying the Loan, Patricia and Todd proactively reached out to Wells Fargo for loss mitigation assistance.

21.     At that time, though options were discussed by the parties, no loss mitigation was actually sought or offered. Todd and Patricia withdrew their request

for assistance and Wells Fargo did not receive nor review a complete loss mitigation application at that time.

22.     Wells Fargo acknowledges that it did not review Todd and Patricia by letter dated March 30, 2017, stating "We're writing to inform you that you have been removed from the loan assistance review process. At this time, you no longer meet the requirements for assistance because: ***After initially asking to be considered for assistance you withdrew your request.***" (Emphasis added). A true and correct copy this correspondence is attached as ***Exhibit 2***.

23.     Todd and Patricia believed that they would not be eligible for meaningful loss mitigation assistance until such time as they had reestablished income sufficient to pay their mortgage and household expenses.

24.     Several months later, Wells Fargo declared the Loan in default then retained Shapiro and directed them to file a foreclosure case against Todd and Patricia to collect the Loan.

25.     On June 2, 2017, Shapiro filed a foreclosure case in the Circuit Court of the 22nd Judicial Circuit, McHenry County, Illinois (Case No. 17-CH-442) (the "Foreclosure Case").

26.     Todd and Patricia appeared through counsel in the Foreclosure Case, filed their answer, and have otherwise actively participated in those proceedings.

6

27.     On April 13, 2018, Wells Fargo, through its counsel, Shapiro, filed in the Foreclosure Case its "Loss Mitigation Affidavit" pursuant to Illinois Supreme Court Rule 114. Therein, Wells Fargo and Shapiro represented to the Court and the parties that: "The subject mortgage loan is eligible for the following loss mitigation programs: FHA foreclosure avoidance options." The affidavit further indicated that the current status of loss mitigation was that the borrowers had been "denied." A true and correct copy of the Loss Mitigation Affidavit is attached as ***Exhibit 3***.

28.     The statements made by Wells Fargo and Shapiro in the Loss Mitigation Affidavit were materially false in that Wells Fargo had not in fact reviewed or otherwise evaluated the borrowers for "FHA foreclosure avoidance options" and the borrowers had not in fact been "denied."

29.     At no time since filing the Loss Mitigation Affidavit has Wells Fargo or Shapiro sought to withdraw, amend, or clarify its false representations.

30.     Though judgment was entered in the Foreclosure Case against Todd and Patricia, no sale of the Home has taken place.

31.     In the summer of 2018, Todd and Patricia had established a new business and had income sufficient to pay their Loan, if modified.

32.     On August 6, 2018, Todd and Patricia submitted a loss mitigation application ("LMA") to Wells Fargo.

33.    A copy of the LMA was also sent to Shapiro on that same date with the following message: "See the clients loss mitigation application attached. Please send me a letter from your client regarding any required additional documents asap."

34.    At the time of their submission of the LMA, no sale of the Home had taken place and no sale was scheduled to take place within the 45 day period following August 6, 2018.

35.    Wells Fargo did not acknowledge receipt of the LMA which meant that the LMA was deemed to be facially complete and therefore complete for the purposes of 12 C.F.R. §1024.41(g).

36.    Wells Fargo did not request any additional documents or otherwise advise Todd and Patricia that the LMA was in any way incomplete.

37.    Thereafter, Wells Fargo failed to review the LMA and failed to evaluate Todd and Patricia for all loss mitigation options available.

38.    By letter dated August 9, 2018, which was actually mailed and postmarked on August 14, 2018, Wells Fargo stated:    "We reviewed the information you recently sent to us, and we reviewed your mortgage's current standing and history. We determined that you're not eligible to be reviewed for assistance."

39.     Wells Fargo did not advise Todd and Patricia that they had any right to appeal the determination by Wells Fargo that the borrowers "were not eligible to be reviewed for assistance."

## TODD AND PATRICIA SEEK ASSISTANCE OF
## COUNSEL TO CORRECT WELLS FARGO ERRORS

40.     Believing that Wells Fargo had erred with respect to the servicing of the Loan, Todd and Patricia retained counsel to investigate and attempt to have such servicing errors corrected.

41.     On August 24, 2018, Todd and Patricia, by and through counsel, sent *via* certified mail, correspondence to Wells Fargo captioned "Request for information pursuant to 12 C.F.R. § 1024.36". A true and correct copy of this correspondence, referenced hereinafter as the "RFI ", is attached as *Exhibit 4*.

42.     By and through the RFI, Todd and Patricia sought information concerning the servicing of their Loan and in particular information related to any loss mitigation options available to the borrowers.

43.     On August 24, 2018, Todd and Patricia, by and through counsel, sent *via* certified mail, correspondence constituting a notice of error to Wells Fargo. A

true and correct copy of this correspondence, referenced hereinafter as "NOE #1", is attached as ***Exhibit 5***.

44.     NOE #1 raised four distinct errors related to Wells Fargo's servicing of the Loan and requested that Wells Fargo correct those errors. In particular, NOE #1 asserted, *inter alia*, that Wells Fargo failed to acknowledge receipt of the LMA, failed to evaluate the LMA the borrowers for all loss mitigation options available, failed to notify the borrowers in writing which loss mitigation options, if any, it would offer the borrowers, or that the borrowers had a right to to appeal the denial of any loan modification option.

45.     A copy of the RFI and NOE #1 were sent to Shapiro on August 24, 2018.

46.     Wells Fargo received RFI and the NOE #1 on August 28, 2018 at the address it designated for receipt of such requests and notices.

47.     Thereafter, Wells Fargo has undertaken no actions to fully respond to the RFI or to correct the errors raised in NOE #1.

48.     By letter dated September 11, 2018, Wells Fargo acknowledged receipt of NOE #1. This acknowledgement was not timely.

49.     Inexplicably, the next day, on September 12, 2018, Wells Fargo sent the borrowers a letter dated September 7, 2018 stating "Thank you for sending

your documentation to us. We're following up to find out why you sent it and how we can help." That letter further indicated that if the borrowers were interested in mortgage assistance then they should reach out to Wells Fargo and submit a loss mitigation application. A true and correct copy of this correspondence is attached as ***Exhibit 6***.

50. Wells Fargo made the statements in its September 7, 2018 letter despite it having the LMA submitted by Todd and Patricia on August 6, 2018 in it possession.

51. On September 12, 2018, Shapiro sent a notice of foreclosure sale indicating that Wells Fargo intended to sell the Home at a sale on October 19, 2018. A true and correct copy of this correspondence is attached as ***Exhibit 7***.

52. Exhibit 7 was sent even though both Wells Fargo and Shapiro had in their possession the LMA and NOE #1.

53. On September 19, 2018, Todd and Patricia, by and through counsel, sent *via* certified mail, correspondence constituting a second notice of error to Wells Fargo. A true and correct copy of this correspondence, referenced hereinafter as "NOE #2", is attached as ***Exhibit 8.***

54. NOE #2 raised three distinct errors related to Wells Fargo's servicing of the Loan and requested that Wells Fargo correct those errors. In particular, NOE

#2 asserted, *inter alia*, that Wells Fargo had failed to timely acknowledge or respond to NOE #1 and that it had moved for foreclosure sale while LMA was pending.

55.     A copy of NOE #2 was sent to Shapiro on September 19, 2018.

56.     Wells Fargo received NOE #2 on September 21, 2018 at the address it designated for receipt of such notices.

57.     By letter dated September 26, 2018 and postmarked as mailed on September 26, 2018, Wells Fargo repeated its prior response: "We reviewed the information you recently sent to us, and we reviewed your mortgage's current standing and history. We determined that you're not eligible to be reviewed for assistance." A true and correct copy of this correspondence is attached as ***Exhibit 9.***

58.     On October 5, 2018, Todd and Patricia, by and through counsel, sent *via* certified mail, correspondence constituting a third notice of error to Wells Fargo. A true and correct copy of this correspondence, referenced hereinafter as "NOE #3", is attached as ***Exhibit 10.***

59.     NOE #3 raised the errors previously asserted and the fact that Wells Fargo had failed to correct those errors or respond appropriately as to it determination regarding the same.

60.     A copy of NOE #3 was sent to Shapiro on September 19, 2018.

61.     Wells Fargo received NOE #3 on October 7, 2018 at the address it designated for receipt of such notices.

62.     At this time, Wells Fargo had not agreed to stop its actions to conduct a foreclosure sale of the Home so Todd and Patricia's counsel was compelled to file its first motion to stay the sale.   On October 15, 2018, the court in the Foreclosure Case granted that motion and stayed the sale sought by Wells Fargo until December 6, 2018.

63.     On October 30, 2018, Wells Fargo sent correspondence to Todd And Patricia's counsel which was received on November 13, 2018. A true and correct copy of this correspondence is attached as ***Exhibit 11.***

64.     In the letter which is attached as Exhibit 11, Wells Fargo makes multiple false, misleading statements. Wells Fargo opens the letter with the statement: "I'm glad we spoke about the request." I appreciate the opportunity to help you, and I'm sending this letter to summarize the key points from our conversation."

65.     At no time did either Todd, Patricia, or their counsel speak with anyone from Wells Fargo by telephone regarding this Loan in 2018.

13

66.    In the letter which is attached as Exhibit 11, Wells Fargo states that the Loan is eligible for "a repayment plan, unemployment forbearance, informal forbearance, and Federal Housing Administration (FHA) Home Affordable Modification Program (HAMP)." This statements contradicts the sworn statements made by Wells Fargo and Shapiro to the Court in the Loss Mitigation Affidavit (Exhibit 2).

67.    In the letter which is attached as Exhibit 11, Wells Fargo states that in response to a "Request for analysis to determine if the loan would qualify for modification" that "in order to determine if the account is eligible for payment assistance options, we would need a complete financial package to determine if the account is eligible." This statements was made even thought Wells Fargo and Shapiro had the LMA and neither had indicated it was not complete nor had that application been reviewed and any determination made other than Wells Fargo's false claim that the borrowers were not eligible, an error Wells Fargo was made aware of and requested to address through NOE # 1, NOE #2, and NOE #3.

68.    In the letter which is attached as Exhibit 11, Wells Fargo states: "We received a complete financial package on February 17, 2017. We sent correspondence dated March 30, 2017, to advise that the account was removed

14

from the payment assistance as Patricia withdrew her request for payment assistance."

69.     Wells Fargo acknowledges in Exhibit 11 that it had not previously completed a review in 2017 - that application had been withdrawn by the borrowers before consideration. Yet, Wells Fargo persisted in the contrary position that the borrowers were not eligible due to a prior review and denial.

70.     On November 28, 2018, Todd and Patricia, by and through counsel, sent *via* certified mail, correspondence constituting a fourth notice of error to Wells Fargo. A true and correct copy of this correspondence, referenced hereinafter as "NOE #4", is attached as ***Exhibit 12.***

71.     A copy of NOE #4 was sent to Shapiro on November 28, 2018.

72.     Wells Fargo received NOE #4 on November 30, 2018 at the address it designated for receipt of such notices.

73.     NOE #4 raised the errors previously asserted and the fact that Wells Fargo had failed to correct those errors or respond appropriately as to its determination regarding the same.

74.     Wells Fargo did not respond to NOE #4.

75.     After four unsuccessful requests for Wells Fargo to correct its errors, Todd and Patricia were compelled to bring the instant action.

## IMPACT ON AND DAMAGE TO TODD AND PATRICIA

76. Todd and Patricia reached out to Wells Fargo for help in 2017 when they encountered financial difficulty. That application was withdrawn because they acknowledged that they would not qualify based upon a lack of income.

77. The borrowers then focused on regaining their lost income and upon achieving that goal by the summer of 2018 they sought a full review of their loss mitigation application.

78. They expected that Wells Fargo would place the Foreclosure Case on hold and evaluate their application.

79. Instead, they were met with callous indifference and a misguided determination on the part of Wells Fargo to steamroll the foreclosure through to sale.

80. Twice, Todd and Patricia have had to employ counsel to prepare and present motions to stay a scheduled sale of the Home. But for Wells Fargo's conduct in failing to review the LMA and to refrain from pursuing a foreclosure sale while that review was undertaken, legal fees for this work would not have been required.

81. The impact of Wells Fargo's conduct on Todd and Patricia has been severe - emotionally and financially.

82.    Todd and Patricia have endured severe emotional distress directly and proximately caused by the conduct of Wells Fargo. This stress is driven by the daily ongoing fear that they might lose their Home in foreclosure and be forced to leave their Home. This stress and fear has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant and persistent emotional distress.

83.    The actions of Wells Fargo have further caused Todd and Patricia to remain unnecessarily in a default status on the Loan and remain in foreclosure for a significantly longer time than they would have if Wells Fargo had acted appropriately and with reasonable diligence in handling the errors alleged, which has caused continued damage to their credit and an unnecessary delay to Todd and Patricia's rehabilitation of their credit.

84.    The actions of Wells Fargo have caused Todd and Patricia to incur actual damages including time off work, travel expenses to and from their attorney's office, filing fees, attorneys' fees to defend the Foreclosure Case and to seek stays of the sale of their Home, costs, and expenses for the investigation and preparation of each NOE, the review of any response made by Wells Fargo, and the preparation and prosecution of this action.

85.    Throughout this entire ordeal, Todd and Patricia have merely wanted to save their Home. They have repeatedly asked Wells Fargo to just fix the errors

alleged, review them for all available loss mitigation options, and cease its efforts to sell the Home. Wells Fargo has steadfastly failed and refused to do so.

86.    Wells Fargo has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating provisions of the Real Estate Settlement Procedure Act, 12 U.S.C. §§2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. part 1024  ("RESPA"). As set forth, infra, Todd and Patricia have alleged not less than five (5) violations which demonstrates said pattern and practice.

87.    Based on the actions of Wells Fargo and Shapiro, Todd and Patricia seek recovery for the claims alleged, *infra*.

## COUNT ONE

### Violation of  12 C.F.R. §1024.35(e)

### [Wells Fargo's Failure to Properly Respond to Multiple Notices of Error in Violation of 12 C.F.R. §1024.35]

88.    Todd and Patricia restate and incorporate all of their statements and allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten herein.

89.    12 C.F.R. §1024.35(e)(1) provides that a servicer must respond to a notice of error by either correcting the error or errors identified by the borrower

18

and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

90.    NOE #1, NOE #2, NOE #3 and NOE #4 each set out multiple errors in servicing by Wells Fargo.

91.    Wells Fargo failed to reasonably investigate and respond to the alleged errors contained in each of these notices of error and instead sent responses which indicated that it had not conducted any reasonable investigation and provided information which was either false or which contradicted its own statements or filings it made with the Court in the Foreclosure Case.

92.    Any reasonable investigation into the errors alleged would have uncovered the errors alleged and in particular Wells Fargo's own admissions through its own correspondence dated March 30, 2017 (*Exhibit 2*) wherein it stated

that the borrower's prior request for assistance had been withdrawn and not reviewed.

93.     Wells Fargo's actions, in failing to conduct a reasonable investigation of the errors alleged constitute a clear and material violations of 12 C.F.R. §1024.35(e).

94.     Wells Fargo's actions are believed to be a pattern and practice of behavior in conscious disregard for Todd and Patricia's rights.

95.     As a result of Wells Fargo's actions, Wells Fargo is liable to Todd and Patricia for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

**WHEREFORE,** the Plaintiffs pray for the entry of judgment in their favor and against Wells Fargo, as follows:

A.     For actual damages, all costs and reasonable attorney fees;

B.     For statutory damages of Two Thousand Dollars ($2,000.00) per Plaintiff for each and every violation contained in Count Two;

C.     For all other relief this Court may deem just and proper.

### COUNT TWO

**Violation of 12 C.F.R. § 1024.41(g)**

**[Wells Fargo's Dual Tracking]**

96.     Todd and Patricia restate and incorporate all of their statements and allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten herein.

97.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

98.     12 C.F.R. § 1024.41(g) provides that if a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option."

99.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. §

1024.41(g) provides that the prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale."

100.   Wells Fargo's actions in moving toward the sale of the Home while a loss mitigation application - the LMA - was facially complete or otherwise pending review constitutes a clear and egregious violation of 12 C.F.R. § 1024.41(g).

101.   Wells Fargo's actions are part of a pattern and practice of behavior in conscious disregard for the rights of Todd and Patricia.

102.   In addition to the damages outlined, *supra*, Wells Fargo's violation of 12 C.F.R. § 1024.41(g) directly and proximately caused Todd and Patricia to incur actual damages including but not limited to attorneys' fees in retaining counsel to attempt to stay the sale of the Home.

103. Wells Fargo is liable to Todd and Patricia for actual damages, statutory damages, costs, and attorneys' fees.

**WHEREFORE,** the Plaintiffs pray for the entry of judgment in their favor and against Wells Fargo, as follows:

A.     For actual damages, all costs and reasonable attorney fees;

B.     For statutory damages of Two Thousand Dollars ($2,000.00) per Plaintiff for each and every violation contained in Count Two;

C.     For all other relief this Court may deem just and proper.

## COUNT THREE

### Violation of 815 ILCS 505/2

### [Illinois Fraud Act]

104. Todd and Patricia restate and incorporate all of their statements and allegations contained in paragraphs 1 through 87 in their entirety, as if fully rewritten herein.

105. The Illinois Fraud Act at 815 ILCS 505/2, states, in relevant part:

> *Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or*

> *omission of such material fact... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.*

106.    The Illinois Fraud Act at 815 ILCS 505/2, states, in relevant part:

> *Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper.*

107.    Wells Fargo violated the Illinois Fraud Act, specifically 815 ILCS 505/2, by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in their attempts to wrongfully breach the Loan which Todd and Patricia had dutifully performed so as to move towards the foreclosure of the Home. In particular, Wells Fargo sent multiple, false and deceptive communications to Todd and Patricia, filed a false and deceptive affidavit in the Foreclosure Case, and moved for sale of the Home knowing that that doing so was a violation of law

108.   The conduct of Wells Fargo occurred during the course of trade or commerce.

109.   Wells Fargo, by and through its conduct, intended that Todd and Patricia would rely on its misrepresentations about status of their loss mitigation

efforts and eligibility and that they would withdraw their requests for assistance allowing Wells Fargo to take their Home.

110.   Wells Fargo's conduct, as detailed, *supra*, constitutes unfair conduct under the Fraud Act.

111.   Wells Fargo's unfair and deceptive conduct was immoral, unethical, unscrupulous and oppressive, especially in that Wells Fargo was, at all times relevant, in a position of strength in relation to Todd and Patricia.

112.   Wells Fargo owed Todd and Patricia a duty of good faith and fair dealing. Wells Fargo owed Todd and Patricia a fiduciary duty as servicer. Wells Fargo had discretion with respect to its handling of loss mitigation process.

113.   Wells Fargo's conduct violates public policy, including, RESPA, because, as detailed herein, Wells Fargo used false and deceptive representations in connection with its collection of the Loan.

114.   On information and belief, Wells Fargo, receives compensation for servicing loans that are in default which is greater that the compensation each receives for loans not in default. Additionally, Wells Fargo receives additional revenue for fees, including late fees, corporate advances, property inspections, and similar fees, which are charged to borrowers like Todd and Patricia for loans alleged to be in default. Thus, Wells Fargo has a financial incentive to place a loan

serviced in default. By its conduct, Wells Fargo sought to keep Todd and Patricia in default in order to receive greater compensation as servicer of their Loan and it sought to deceive them into paying those amounts through deception and multiple misrepresentation. Wells Fargo chose to ignore the efforts to have the errors the identified corrected simply because they could and because they were motivated by profit rather than any desire to deal with Todd and Patricia in good faith and fairly.

115.    As pled, *supra*, Todd and Patricia have been harmed by, and continue to suffer from harm resulting from, the unfair and deceptive practices of Wells Fargo in making misrepresentations described herein.

116.    In addition, Wells Fargo's conduct has caused Todd and Patricia to suffer great emotional distress driven by the fear that they might lose the Home and be forced to leave the Home which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

117.    Wells Fargo's conduct, as pled, *supra*, was outrageous, willful, and wanton, and it showed a reckless disregard for the Todd and Patricia's rights.

118.    In addition, due to the nature of Wells Fargo's conduct, Todd and Patricia are entitled to recover punitive damages.

**WHEREFORE**, the Plaintiffs pray for the entry of judgment in their favor and against Wells Fargo, as follows:

A. Finding that Wells Fargo violated the Illinois Fraud Act;

B. Awarding Plaintiffs statutory damages;

C. Awarding Plaintiffs actual damages in an amount to be determined at trial;

D. Awarding Plaintiffs punitive damages in an amount to be determined at trial;

E. Awarding Plaintiffs costs and reasonable attorneys' fees; and

F. Granting such other and further relief as is just and proper.

*Respectfully submitted,*

*/s/ Rusty A. Payton*
Rusty A. Payton
Marc E. Dann
DannLaw
20 North Clark St., Suite 3300
Chicago, Illinois 60602
Ph. 312-702-1000
payton@dannlaw.com
*Counsel for Plaintiffs Todd F. Smith and Patricia A. Livesay Smith*

---

## JURY DEMAND

---

Plaintiffs, Todd and Patricia, hereby respectfully demand a trial by jury on

all such claims that may be so tried.

*/s/ Rusty A. Payton*
Rusty A. Payton
Marc E. Dann
DannLaw
20 North Clark St., Suite 3300
Chicago, Illinois 60602
Ph. 312-702-1000
payton@dannlaw.com
*Counsel for Plaintiffs Todd F. Smith and*
*Patricia A. Livesay Smith*