UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TODD SMITH and PATRICIA SMITH,<br><br>  Plaintiffs,<br><br>   v.<br><br>WELLS FARGO BANK, N.A.,<br><br>  Defendant. | No. 18 CV 7979<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

  Plaintiffs Todd and Patricia Smith defaulted on their home mortgage loan held by Wells Fargo, and Wells Fargo initiated foreclosure proceedings. The Smiths then submitted a loss mitigation application, which they contend Wells Fargo did not properly evaluate or respond to. The Smiths sent Wells Fargo a series of letters notifying it of purported errors, including mishandling their loss mitigation application, moving forward with the foreclosure sale with the application pending, and failing to respond to their notices of error. The Smiths now sue Wells Fargo for violating the Real Estate Settlement Procedures Act by not properly responding to the notices of error, and for violating the Illinois Consumer Fraud and Deceptive Business Practices Act by making misrepresentations and by violating RESPA. Wells Fargo moves to dismiss the complaint. For the reasons explained below, the motion is granted in part, denied in part.

I.   Legal Standards

  A complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I must accept as true the facts

alleged in the complaint and draw reasonable inferences from them in the Smiths' favor, but I am not required to accept as true the complaint's legal conclusions. *Id.* at 678–79. I review the complaint, exhibits attached to the complaint, and, if they are central to the claims, documents referenced by the complaint. *Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018).

## II.  Facts

The Smiths have a home mortgage loan held by Wells Fargo. [1] ¶¶ 2–5.[1] In early 2017, the Smiths feared falling behind on their loan payments, so they contacted Wells Fargo about loss mitigation assistance. [1] ¶¶ 19–20. But the Smiths withdrew their request before they filed a complete application, believing they were ineligible. [1] ¶¶ 21, 23. Several months later, Wells Fargo declared the loan to be in default. [1] ¶ 24. In June 2017, Wells Fargo initiated foreclosure proceedings. [1] ¶ 25. Wells Fargo submitted a loss mitigation affidavit in the foreclosure case, which stated that the Smiths' loan was eligible for "FHA foreclosure avoidance options" but that the current status of those options was that they were "denied." [1] ¶ 27. The court entered a judgment of foreclosure and sale in July 2018. [1] ¶ 30; [1-7].

In August 2018, the Smiths submitted a loss mitigation application to Wells Fargo. [1] ¶ 32. Without acknowledging receipt of the application or asking for more information, Wells Fargo responded with a letter saying that the Smiths were "not eligible to be reviewed for assistance." [1] ¶¶ 35–38. A couple of weeks later, the

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. The complaint is [1].

Smiths sent a letter requesting information about loan mitigation options and another letter stating that Wells Fargo erred in not acknowledging their loss mitigation application, not properly evaluating it, not issuing a proper denial, and not informing them of their right to appeal. [1] ¶¶ 41–44. Wells Fargo responded about two weeks later with a general letter saying that it required more information about why the Smiths sent their letter and how Wells Fargo could help. [1] ¶ 49. The response also attached a mortgage assistance application, even though the Smiths had already submitted a loss mitigation application. [1] ¶¶ 49–50.

In September 2018, the Smiths received written notice that a foreclosure sale of their home would take place the following month. [1] ¶ 51. This prompted them to send another letter to Wells Fargo, this time stating that Wells Fargo erred in failing to acknowledge or respond to their earlier notice of error and in moving forward with the foreclosure sale while their loss mitigation application was still pending. [1] ¶ 54. Wells Fargo responded by repeating its earlier denial of the application, saying that the Smiths were "not eligible to be reviewed for assistance." [1] ¶ 57. The Smiths then sent a third letter, reiterating the earlier asserted errors and Wells Fargo's failure to respond to them. [1] ¶ 59. The Smiths moved the court in the foreclosure case to stay the sale, and their motion was granted. [1] ¶ 62.

In October 2018, a couple of weeks after the sale was stayed, Wells Fargo sent the Smiths a letter. [1] ¶ 63. The letter began with "I'm glad we spoke about the request," even though neither the Smiths nor their lawyers had ever spoken on the phone about the loan with anyone from Wells Fargo. [1] ¶¶ 64–65. The letter went on

3

to say that Wells Fargo "would review the account for a repayment plan, unemployment forbearance, informal forbearance, and Federal Housing Administration (FHA) Home Affordable Modification Program (HAMP)." [1] ¶ 66; [1-11] at 1.[2] To determine their eligibility for a modification, the letter said that Wells Fargo "would need a complete financial package to determine if the account is eligible," even though Wells Fargo already had the Smiths' loss mitigation application. [1] ¶ 67. The following month—days before filing the complaint in this case—the Smiths sent Wells Fargo a final letter, asserting the errors they raised in their previous letters and Wells Fargo's failure to respond. [1] ¶¶ 70, 73. Wells Fargo did not respond. [1] ¶ 74.

## III. Analysis

### A. RESPA Claims

"The Real Estate Settlement Procedures Act … is a consumer protection statute that regulates the activities of mortgage lenders, brokers, servicers, and other businesses that provide services for residential real estate transactions." *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1053 (7th Cir. 2018). One of its purposes is to provide consumers with timely information about real estate settlement processes.

---

[2] The complaint alleges that "[i]n the letter which is attached as Exhibit 11, Wells Fargo states that the Loan is eligible for 'a repayment plan, unemployment forbearance, informal forbearance, and Federal Housing Administration (FHA) Home Affordable Modification Program (HAMP).'" [1] ¶ 66. But the letter—attached to the complaint—says that Wells Fargo "would review the account" for the four options, not that the loan was eligible for them. [1-11] at 1. I credit the letter's actual language. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("Where an exhibit and the complaint conflict, the exhibit typically controls. A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document.").

4

12 U.S.C. § 2601. The Consumer Financial Protection Bureau is charged with interpreting RESPA and prescribing rules and regulations to achieve its purposes. 12 U.S.C. § 2617(a). Regulation X is one such implementing regulation that imposes certain requirements on loan servicers with respect to loss mitigation applications. *See* 12 C.F.R. § 1024.1.

### 1. *Notices of Error (Count I)*

Under Regulation X, a "servicer" must respond to a "notice of error" in a certain way and within a certain time frame. *See* 12 C.F.R. § 1024.35(e). For the most part, Wells Fargo does not contest the allegations that it did not respond in the manner required by the regulation. The one exception is the Smiths' last letter, which the complaint alleges that Wells Fargo received just two business days before the Smiths filed this lawsuit. [1] ¶ 72. Wells Fargo correctly argues that even assuming the letter was a notice of error to which it was obligated to respond, its time to do so had not yet elapsed at the time the complaint was filed, so the Smiths' fourth letter cannot be the basis of their claim. With respect to the remaining three letters, Wells Fargo argues that it was not required to respond because it was not a "servicer" and the Smiths' letters did not assert errors of the type covered by the regulation.

#### a. Whether Wells Fargo is a "Servicer"

A "servicer" is "the person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2). "Servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." 12 U.S.C. § 2605(i)(3). Wells Fargo argues that the Smiths' letters were sent after they defaulted on the loan, and once they were in default, Wells Fargo was no longer receiving scheduled payments from

5

them. So, the argument goes, the loan was no longer being serviced, and Wells Fargo was not a servicer obligated to respond to notices of error.

Wells Fargo's leading authority for the proposition that it was not a servicer once the Smiths were in default is *Daw v. Peoples Bank & Tr. Co.*, 5 Fed. App'x 504, 505 (7th Cir. 2001). In *Daw,* the plaintiff claimed she did not receive RESPA-mandated advanced notice before the servicing rights to her loan were assigned to someone else. *Id.* The court held that she was not entitled to notice, because "[o]nce Daw defaulted, there were no longer any scheduled periodic payments to make or to collect, and thus there were no servicing rights to assign, sell, or transfer." *Id*. Wells Fargo argues that this interpretation of the statutory definitions means that once the Smiths defaulted, there were no scheduled payments to collect, so no servicing of the loan, and, Wells Fargo argues, no servicer. As an unpublished Seventh Circuit decision issued before 2007, *Daw* is not binding precedent. *See* Seventh Cir. R. 32.1. Anyway, *Daw* does not support Wells Fargo's argument.

The *Daw* court did not find that the assignor of rights was not a servicer—it found that there was no assignment of the servicing of the loan. *See Daw*, 5 Fed.App'x at 505. In other words, it was interpreting the definition of "servicing," not "servicer." A "servicer" is not a person who services a loan but "the person *responsible for* servicing a loan." 12 U.S.C. § 2605(i)(2) (emphasis added). *Daw* points out that after default a loan is no longer being serviced, but that does not mean that there is no longer a person responsible for receiving and applying payments made under the loan agreement—for servicing the loan. Wells Fargo is plausibly alleged to have been the

6

servicer of the Smiths' loan even after default because it remained responsible for servicing it, even if there was no active servicing. *See Buyea v. Select Portfolio Servicing, Inc.*, No. 9:16-CV-80347, 2016 WL 5904502, at *3 (S.D. Fla. Oct. 11, 2016) ("Whether or not Defendant was actively servicing the loan, Defendant remained responsible for servicing the loan at the time it received Plaintiff's RFI."). If Wells Fargo were right that one cannot be the servicer of a loan after default, RESPA's requirements for servicers conducting foreclosure sales would make little sense. *See* footnote 4, below. There may be instances where years after a default, responsibility for servicing the loan has lapsed. *See, e.g.*, *Balogh v. Deutsche Bank Nat'l Tr. Co.*, No. 17 CV 862, 2017 WL 5890878, at *6 (N.D. Ill. Nov. 28, 2017). But here, it is alleged that the Smiths and Wells Fargo communicated before and after the declaration of default, and during the pendency of foreclosure proceedings occurring close in time to the default. It is plausible that under these circumstances Wells Fargo still bore some responsibility for loan servicing, and that therefore, RESPA applies to its conduct.

          b.      Whether the Letters Asserted Covered Errors

A "notice of error" is "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).[3] An "error" must belong to one of the categories of covered errors listed in the regulation. 12 C.F.R. § 1024.35(b). The

---

[3] Wells Fargo initially characterized the Smiths' letters as attempts at qualified written requests but yield to the Smiths' assertion that they were not qualified written requests but rather notices of error. "A qualified written request is just one form that a written notice of error or information request may take." 12 C.F.R. pt. 1024, supp. I.

7

Smiths' letters assert the following errors—(1) failure to properly evaluate and respond to their loss mitigation application, (2) moving forward with the foreclosure sale with a complete loss mitigation application pending, and (3) failure to properly respond to their previous notices of error. Wells Fargo argues that these asserted errors are not covered errors.

A loss mitigation application is a request for a loss mitigation option, meaning an alternative to foreclosure. *See* 12 C.F.R. § 1024.31. The only category of covered errors that expressly refers to loss mitigation is 12 C.F.R. § 1024.35(b)(7), which covers the "[f]ailure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39." But, as Wells Fargo points out, § 1024.39 relates to information that servicers are required to give delinquent borrowers within 45 days of delinquency and does not include any provisions about the acknowledgment, evaluation, or response to loss mitigation applications.

There is also a catch-all category of covered errors that includes "[a]ny other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(11). The question is whether asserted errors regarding the processing of a loss mitigation application relate to the servicing of a loan. The Bureau intentionally declined to include a category for improperly considered loss mitigation applications in its list of covered errors. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01, 10743–44 ("[T]he Bureau believes that the appeals process set forth in § 1024.41(h) provides an

effective procedural means for borrowers to address issues relating to a servicer's evaluation of a borrower for a loan modification program. For this reason, and the reasons stated below with respect to loss mitigation practices, the Bureau declines to add a servicer's failure to correctly evaluate a borrower for a loss mitigation option as a covered error in the final rule."). The agency understands the evaluation of loss mitigation applications to fall outside regular servicing of the loan, and I agree—loss mitigation application errors are not errors in the processing of scheduled periodic payments under the loan terms. The Smiths' letters that provide notice of errors relating to the processing of their loss mitigation application are not covered by § 1024.35's response requirements.

But the letter complaining that Wells Fargo was erroneously moving forward with the foreclosure sale despite the Smiths' complete loss mitigation application does assert a covered error. Covered errors include those about "[m]oving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j)." 12 C.F.R. § 1024.35(b)(10). That is precisely the error that was asserted in the Smiths' second letter. [1] ¶ 54. Wells Fargo provides no argument as to why the asserted error regarding foreclosure is not covered. Even though, as I discuss below, the Smiths have not sufficiently alleged that Wells Fargo violated § 1024.41(g), they were entitled to a timely response from Wells Fargo explaining why there was no error. *See* 12 C.F.R. § 1024.35(e)(1)(i)(B). Because the Smiths allege that they did not receive the required response, they have adequately stated a claim.

9

Lastly, the failure to properly respond to notices of error is not itself a covered error. It does not fit into any of the listed categories of covered error, nor does it relate to the servicing of the loan to fit within the catch-all category.

    2.  *Foreclosure Sale (Count II)*

Regulation X provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale," unless certain exceptions apply. 12 C.F.R. § 1024.41(g).[4] The Smiths claim that Wells Fargo violated the prohibition by noticing the foreclosure sale despite their complete loss mitigation application. But Wells Fargo contends that noticing the sale did not constitute moving for a judgment or order or conducting the sale. This view is supported by the Bureau's interpretation, which is that if the foreclosure started before the application was filed, then the servicer can "proceed[ ] with the foreclosure process, including any publication, arbitration, or mediation requirements established by applicable law" as long as it doesn't "cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale." 12 C.F.R. pt. 1024, supp. I, paragraph 41(g). Providing notice of a sale is not the same as conducting one, and the complaint expressly alleges that no sale occurred. *See* [1] ¶ 30.

---

[4] This requirement only applies to a "servicer," but Wells Fargo does not make the argument that it is not a servicer as it did with respect to the notices of error claim.

The Smiths point to the Bureau's guidance providing that "[t]he prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment … which may directly result in a judgment of foreclosure or order of sale." 12 C.F.R. pt. 1024, supp. I, paragraph 41(g). But the complaint does not allege that Wells Fargo made any such dispositive motion in the foreclosure case after the Smiths submitted their loss mitigation application. To the contrary, the notice of sale (attached to the complaint) says that the judgment of foreclosure was entered in July 2018, about a month before the application was submitted. [1-7] at 1. Nor does the interpretive guidance, as the Smiths contend, require Wells Fargo to have taken steps to stop the sale. The guidance provides instead that if a servicer made such a dispositive motion before it received a complete application but took reasonable steps to avoid a ruling on the motion, then it is not considered to have moved for a foreclosure judgment even if the court ended up issuing it. 12 C.F.R. pt. 1024, supp. I, paragraph 41(g). That is not the situation alleged in the complaint. Wells Fargo already had its foreclosure judgment before the Smiths requested loss mitigation.

The complaint does not allege that Wells Fargo moved for a foreclosure judgment or order of sale or conducted a foreclosure sale after receiving the Smiths' loss mitigation application, so Count II is dismissed.[5]

---

[5] In its opening brief, Wells Fargo argued that one of the exceptions to § 1024.41(g) applied because Wells Fargo found the Smiths ineligible for loss mitigation and the appeals process was not applicable. *See* § 1024.41(g)(1). It withdrew the argument in its reply brief. *See* [19] at 5 n.2.

11

### B. ICFA (Count III)

The ICFA prohibits unfair and deceptive business practices. 815 ILCS 505/2. The Smiths allege that Wells Fargo intentionally deceived them by filing a deceptive affidavit in the foreclosure case, making misrepresentations in the October 2018 letter, and moving for foreclosure despite knowing that it was illegal to do so, all to keep the Smiths in default so it could receive the fees associated with defaulted loans. To state a claim for a deceptive practice, the Smiths must allege that (1) Wells Fargo engaged in a deceptive practice, (2) Wells Fargo intended for them to rely on the deception, (3) the deception occurred during trade or commerce, (4) they were actually damaged, and (5) their damage was proximately caused by the deception. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018). The Smiths must also allege that they were in fact deceived. *See Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 596 (7th Cir. 2017).

#### 1. Loss Mitigation Affidavit

The Smiths claim that the loss mitigation affidavit sworn by the Vice President of Loan Documentation that Wells Fargo filed in the foreclosure case contained misrepresentations. Wells Fargo argues that the affiant's statements are protected by the absolute litigation privilege. *See MacGregor v. Rutberg*, 478 F.3d 790, 791 (7th Cir. 2007) ("Illinois … recognizes an absolute privilege for statements in testimony or pleadings in a judicial proceeding."). In response, the Smiths argue that the privilege is limited to "disinterested lay witnesses" and that it does not apply because they are not suing the affiant herself. The Smiths provide no authority for the assertion that the privilege only applies to disinterested witnesses. *MacGregor* states that the

12

privilege "is especially designed for the protection and encouragement of disinterested lay witnesses," not that it is limited to them. *Id*. at 792. In fact, the case holds the opposite and finds that the privilege applies to expert witnesses. *Id*. Nor do the Smiths provide any legal authority to persuade me that Wells Fargo cannot invoke the privilege to shield it from liability for statements that one of its agents made in a judicial proceeding prosecuted by it. And I am equally unpersuaded that the privilege is limited to statements made in proceedings that were ultimately meritless.

Anyway, even if the litigation privilege did not apply, the alleged misrepresentations could not support an ICFA claim. The first alleged misrepresentation is that "[t]he subject mortgage loan is eligible for the following loss mitigation programs: FHA foreclosure avoidance options." [1] ¶ 27. The second is the representation that those options had been "[d]enied." [1] ¶ 27. Even assuming the statements were false, the complaint does not allege that the Smiths were deceived by them in some injurious way. Indeed, it is difficult to infer an intent to deceive the Smiths from a filing submitted not to the Smiths, but to the foreclosure court.

    2.    *October 2018 Letter*

In Wells Fargo's October 2018 letter to the Smiths, it makes several statements that the Smiths contend are misrepresentations. First, Wells Fargo says, "I'm glad we spoke about the request … I'm sending this letter to summarize the key points from our conversation." [1] ¶ 64. The Smiths say that neither they nor their counsel spoke with anyone on the phone about their loss mitigation application, so the statement was a lie. Second, Wells Fargo says it would "need a complete financial

13

package to determine if the account is eligible" for a loan modification. [1] ¶ 67. The Smiths allege that Wells Fargo already had a complete loss mitigation application. Lastly, Wells Fargo responds to an inquiry about the available payment assistance options by saying that it "would review the account" for four options, one of which was the FHA Home Affordable Modification Program. [1-11] at 1. The Smiths contrast this statement to the affidavit filed in the foreclosure case, in which the Wells Fargo agent said the Smiths' loan was "eligible" only for the FHA program. [1] ¶ 27.

This last alleged misrepresentation about the Smiths' assistance options is not a misrepresentation. The letter says that the Smiths' loan can be "reviewed" for four options, not that the loan is eligible for them. The factual allegations do not suggest that the statement is false or misleading. Nor does the complaint allege that the Smiths were deceived by the statement and injured as a result. The other two alleged misrepresentations are similarly unaccompanied by allegations giving rise to an inference that the Smiths were deceived and injured by the particular misrepresentations. The complaint does not allege, for example, that the Smiths were induced by Wells Fargo's statement about requiring a complete financial package to send another one and thereby incurred damages in the form of printing and mailing fees. And I cannot conceive of a way in which the alleged misrepresentation about having spoken to the Smiths could have deceived and injured them.

    3. *RESPA Violation*

The Smiths' last ICFA theory is that Wells Fargo's practice of violating RESPA by moving for foreclosure with their loss mitigation application pending was unfair, because RESPA violations are unfair practices under the ICFA. *See Saccameno v.*

*Ocwen Loan Servicing, LLC*, No. 15 CV 1164, 2019 WL 1098930, at *9 (N.D. Ill. Mar. 1, 2019). But as described above, the complaint does not adequately allege that publishing the sale violated RESPA, so the ICFA claim is dismissed.

**IV. Conclusion**

Wells Fargo's motion to dismiss [13] is granted in part, denied in part. The Smiths may pursue their claim that Wells Fargo violated RESPA by failing to properly respond to their notice of error regarding moving forward with the foreclosure sale with a complete loss mitigation application pending. All other claims are dismissed without prejudice.[6]

Wells Fargo shall answer the surviving claim by June 11, 2019. The parties shall comply with the Mandatory Initial Discovery Pilot Project by July 11, 2019. All fact discovery shall be noticed in time for completion by November 22, 2019. Any requests to amend the pleadings must be made by September 23, 2019. A status hearing is set for September 4, 2019, and 9:30 a.m.

ENTER:

Manish S. Shah
United States District Judge

Date: May 21, 2019

---

[6] "District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).